1  Eugene G. Iredale, SBN: 75292
2  Julia Yoo, SBN: 231163
   IREDALE & YOO, APC
3  105 West F Street, Fourth Floor
   San Diego, CA 92101
4  Telephone:    619.233.1525
   Facsimile:    619.233.3221
5

6                UNITED STATES DISTRICT COURT
          IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
7

8
   NICOLE GOCHMANOSKY,            )  CASE NO: **'12CV2944 L     NLS**
9  ASHLEY WARDLE, MELISSA         )                            _____
   VEGA, ANDREA TINAJERO, and     )  COMPLAINT
10 KENZIE McDONALD,               )
                                  )  (1)   ARREST WITHOUT PROBABLE
11                                )        CAUSE (42 U.S.C. § 1983)
              Plaintiffs,         )  (2)   RETALIATION (42 U.S.C. § 1983)
12                                )  (3)   FALSE IMPRISONMENT (42 U.S.C. §
   v.                             )        1983)
13                                )  (4)   VIOLATION OF DUE PROCESS (42
   CITY OF SAN DIEGO, WILLIAM     )        U.S.C. § 1983)
14 LANSDOWNE, BOYD LONG,          )  (5)   MALICIOUS PROSECUTION (42
   COUNTY OF SAN DIEGO, WILLIAM   )        U.S.C. § 1983)
15 GORE, and DOES 1 - 60,         )  (6)   FAILURE TO PROPERLY TRAIN (42
                                  )        U.S.C. § 1983)
16            Defendants.         )  (7)   FAILURE TO SUPERVISE AND
                                  )        DISCIPLINE  (42 U.S.C. § 1983)
17                                )  (8)   *MONELL* LIABILITY
                                  )  (9)   INTENTIONAL INFLICTION OF
18                                )        EMOTIONAL DISTRESS (State Law)
                                  )  (10)  FALSE ARREST (State Law)
19                                )  (11)  BATTERY (State Law)
                                  )  (12)  NEGLIGENCE (State Law)
20                                )  (13)  VIOLATION OF CALIFORNIA CIVIL
                                  )        CODE § 52.1 (State Law)
21                                )  (14)  PERMANENT INJUNCTION AND
                                  )        OTHER EQUITABLE RELIEF
22                                )
                                  )
23                                )
                                  )  JURY TRIAL IS HEREBY
24                                )  DEMANDED
                                  )
25                                )
                                  )
26                                )
                                  )
27                                )
   _____  )
28

1

Plaintiffs, by their attorneys of record, Iredale and Yoo, APC,  allege and complain as follows:

**GENERAL ALLEGATIONS**

1.     Jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(3) and (4), *et. seq.*

2.     This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367(a).

3.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 – 2202 and Rule 57 of the Federal Rules of Civil Procedure.

4.     Venue is proper in the Southern District of California because the acts or omissions which form the basis of the Plaintiff's claims occurred in San Diego, California, within the Southern District.

5.     Plaintiffs have complied with Government Code  §§ 800 *et seq*.

**PARTIES**

6.     At all times relevant to this complaint, Plaintiffs were individuals residing in San Diego County, California.

7.     At all times relevant to this complaint, Plaintiff Nicole Gochmanosky was a 30-year old freelance writer for Examiner.com.

8.     At all times relevant to this complaint, Plaintiff Ashley Wardle was a 24-year old graduate student majoring in sociology.

9.     At all times relevant to this complaint, Plaintiff Melissa Vega was a 19-year old college student attending City College.

10.     At all times relevant to this complaint, 19-year old Plaintiff Andrea Tinajero was employed at McGonagle's restaurant and planning to attend City College.

11.     At all times relevant to this complaint, Plaintiff Kenzie McDonald was a student at San Diego State University studying sustainability.

12.     At all times relevant to this complaint, Defendant WILLIAM LANSDOWNE was the chief of San Diego Police Department and a policy-maker.

13.     At all times relevant to this complaint, Defendant BOYD LONG was the assistant chief of San Diego Police Department and supervised patrol operations.  Defendant LONG supervised the activities of the San Diego Police in patrolling the Civic Center.

14.     As the Chief of Police, Defendant LANSDOWNE is responsible for carrying out the policies of the SDPD, as well as the supervision and control of officers who are or were employed by the SDPD, who are under his command and/or who report to him, including the Defendants to be named.

15.     At all times relevant to this complaint, Defendants DOES 1-30 were San Diego police officers and agents of the CITY OF SAN DIEGO.  At all times relevant hereto, these defendants were acting in their professional capacity as San Diego police officers.

16.     At some times relevant to this complaint, Defendant WILLIAM GORE was the sheriff of San Diego and a policy-maker.

17.     At some times relevant to this complaint, Defendants DOES 31-60, were San Diego sheriffs and agents of the COUNTY OF SAN DIEGO.  At some times relevant hereto, these defendants were acting in their professional capacity as San Diego sheriffs and at other times they were working in their personal capacity as individuals outside the scope of their employment.

18.     Plaintiffs are truly ignorant of the true names and capacities of DOES 1 through 60, inclusive, and/or is truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability.

## FACTS

19.     Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

20.     In September 2011, waves of protests against mounting socioeconomic injustice broke out across the United States, capturing the attention of the country. The Occupy San Diego movement, inspired by similar protests around the globe, used the occupation of public space and mass demonstrations to call attention to a wide array of the community's shared concerns.

21.     The movement also used public assemblies to debate concerns and promote direct democratic participation. Within weeks of their emergence, the protests dramatically expanded and deepened U.S. political discourse around the widening gap between rich and poor, bank bailouts and impunity for financial crimes, and the role of money in politics.

22.     A key purpose of the Occupy Movement was to raise awareness about the abuse of power and lack of accountability on the part of large financial institutions.

23.     In San Diego, a group of people gathered at the Civic Center, sharing dialogue, food, information, and education.

24.     The Occupy protesters' physical presence in a public space was a key component of the Occupy protesters' political statement and petitioning conduct.  It expressed the Occupy protesters' statement of the 99% taking back society in a way that other forms of protest could not express.

25.     The response of authorities to the protests included using pepper spray, midnight raids on encampments, baton-swinging officers, and marches accompanied by phalanxes of riot police.

26.     Some time before October 28, 2011, San Diego Police Department and San Diego Sheriff made a decision to act in concert to arrest people *en mass* for being present at the Civic Center regardless of the existence of probable cause to arrest.

27.     Defendants engaged in aggressive, unnecessary and excessive police force against peaceful protesters, bystanders, and legal observers.

28.     Defendants made a decision that they would engage in a violent late-night raid on a peaceful encampment at 2 a.m.

29.     Defendants decided to engage in unjustified closure of public space, dispersal of peaceful assemblies, and kettling (corralling and trapping) of protesters, and carried out those plans on October 28, 2011.

30.     Defendants surrounded the Civic Center on all sides and closed in on the protesters.  They locked the door to the one exit making it impossible for the protesters to leave, then arrested them for not dispersing.

31.     Defendants engaged in arbitrary and selective rule enforcement and baseless arrests.

32.     Defendants kept women on the transportation bus for hours with no access to basic human dignity, including water and access to bathrooms.  Defendants denied the women access to bathrooms despite repeated pleas.  The women on the van were forced to urinate and defecate on themselves.

33.     Protests have long been an important feature of American politics and have been essential to securing fundamental rights and freedoms. The freedoms to peacefully assemble, to engage in political expression, to march and demonstrate, and to seek socioeconomic reform are fundamental rights, vital in all democracies.

34.     Defendants intended to create a substantial chilling effect and deterrent to the First Amendment protected activities by burdening free speech activities with the risk of arrest, of being threatened with physical harm and having to defend themselves against baseless criminal charges.

35.     **NICOLE GOCHMANOSKY:**  At the time of the incident, Plaintiff Nicole Gochmanosky was a freelance writer for Examiner.com.

36.     At approximately 2 a.m. on October 28, 2011, Nicole was observing a raid conducted by San Diego Police Officers and Sheriffs Deputies dressed in riot gear at the Civic Center.

37.     As Nicole stood behind the police barricade at the Civic Center, four to five San Diego Police Officers crossed over the line, grabbed her and placed her under arrest.

38.     Nicole was arrested while complying with orders to stay behind a designated police barricade.

39.     No law enforcement officer asked Nicole to leave the area prior to her arrest.

40.     Nicole was not given time and an opportunity to leave the area or comply with any law enforcement commands before getting arrested.

41.     The officers did not inform Nicole of why she was being arrested when they took her into custody.

42.     Police officers then took Nicole to a van located on A Street and Second Avenue.

43.     Inside the van, other women repeatedly asked to use the restroom, but no officers came to assist them.

44.     Nicole waited inside the van for two hours before being transported to Las Colinas Detention Center.  Before being transported to Las Colinas, Nicole observed that two women had urinated on themselves and another woman had defecated in the van.

45.     After arriving at Las Colinas, Nicole was forced to remain inside the van for over an hour before being processed.

46.     As Nicole was being processed, a Deputy put his hands around her neck and screamed at her to "shut her hole" when Nicole tried to inquire about her personal belongings that law enforcement officials confiscated after they arrested her.

47.     Nicole was then taken to a small holding cell with 15-20 women, and was denied fresh water for nearly three hours.  The women in the holding cell were also not provided drinking cups and soap to wash their hands.

48.     Nicole was released when her mother posted $250 bond at or around 6:00 p.m. on October 28, 2011, after she had been detained for approximately sixteen hours.

49.     Nicole appeared in court to answer to her criminal charges for unlawful assembly and excessive noise.  The prosecutor did not file criminal charges against her.

50.      Nicole experienced extreme pain to her throat following this incident.  She  had bruises around her neck.  Nicole suffered severe emotional distress from being choked during the booking process at Las Colinas Detention Center.

51.     **ASHLEY WARDLE**: At the time of the incident, Plaintiff Ashley Wardle was a graduate student in sociology.

52.     At approximately 2 a.m., Ashley received a message that the police had descended *en mass* to the Civic Center and that an acquaintance who was homeless had nowhere to go.

53.     Ashley drove to the Civic Center to be of assistance.

54.     When Ashley arrived, she saw San Diego police officers and Sheriff deputies in riot gear arresting protesters.  Ashley began filming with her cellular phone.

55.     After she documented the police activities for a few minutes, an officer emerged from a line of law enforcement officers and told her she was being arrested for "unlawful assembly."  Ashley was not standing near any group of protesters.

56.     The people she was filming were not perpetrating violence, nor was there a clear threat of imminent violence.  No officer had asked Ashley to leave.

57.     Ashley was not given time and opportunity to leave the area before getting arrested.

58.     Ashley was taken a small van parked in the Civic Center.  A San Diego Police Officer patted her down.

59.     During the pat-down, the officer unexpectedly touched her groin and she jumped out of surprise.

60.     Another San Diego Police Officer grabbed her by the neck, threw her against the van and told her, "Don't fucking move."  Ashley's head struck the van.

61.     Ashley stayed in the first van for over an hour before being transported to a larger van.

62.     Inside the larger van, another woman asked to use the restroom but no officer came to assist.

63.     From the time of Ashley's arrest until she arrived at the Las Colinas Detention Facility, no officer from the San Diego Police or San Diego Sheriff checked on the welfare of the detainees kept inside the police vehicles.

64.     Ashley was patted down for the second time by a San Diego Sheriff deputy. Before she was patted down, Ashley explained to the Deputy that she was jumpy and scared and told the Deputy what occurred during her first pat down.

65.     The Deputy told her, "If you fucking move, I will take you down" or words to that effect.

66.     Ashley was released when her mom posted a $50 bond on the afternoon of October 28, 2011.

67.     Ashley appeared in court to answer to her criminal charges.  The prosecutor did

1   not file criminal charges against her.

2        68.    Ashley suffered from bruises to her arm.  Ashley suffered headaches for three

3   days following her arrest from being thrown against the van.

4        69.    **MELISSA VEGA:**  At the time of the incident, Plaintiff Melissa Vega was a

5   student at City College studying agriculture.

6        70.    At 2 a.m., Melissa was sleeping in a tent with approximately eight other protesters

7   at the Civic Center when she was awakened by a friend's parents who happened to come to the

8   Civic Center at that time to check on the kids.  The parents told Melissa to get her belongings so

9   that they could drive Melissa home.

10       71.     Melissa came out of the tent and began to gather her bicycle and her backpack.

11  Melissa saw San Diego Police Officers and Sheriffs Deputies in riot gear.

12       72.    The law enforcement officers told Melissa she needed to leave the area.

13       73.    Melissa saw that the glass doors that led out of the Civic Center were chained

14  shut.  San Diego Sheriffs Deputies and Police Officers barricaded all other exit ways, which

15  made it extremely difficult for protesters to leave the vicinity.

16       74.    Melissa witnessed law enforcement officials push her friend to the ground.

17  Melissa asked the officers what they were doing.

18       75.    Instead of answering Melissa's inquiry, several officers threw her to the ground,

19  stepped on her, pulled her hair back and zip tied Melissa's arms behind her back.

20       76.    Officers then forced Melissa up from the ground by pulling her up by her hair and

21  took her to a concrete wall, where she was searched.  During the search, officers pushed

22  Melissa's face against the wall and confiscated her backpack and cell phone.

23       77.    Melissa was not given time and an opportunity to leave the Civic Center before

24  getting arrested.

25       78.    Law enforcement officials did not tell Melissa why she was being arrested when

26  they detained her.

27       79.    Officers took Melissa to a police wagon that was parked inside the Civic Center.

28  Several other protesters were already inside the police wagon when Melissa arrived.  One

protestor was crying and had vomited on herself.

80.     After putting Melissa inside, officers opened the wagon door once or twice at the beginning to obtain personal information from the occupants but did not otherwise inquire into their well-being.

81.     Melissa and the other protesters were forced to sit in the wagon for over an hour before being transported to a larger van, which was located in a parking lot on the corner of A Street and Second Avenue.

82.      Melissa asked officers to loosen her zip tie when she was being taken from the wagon to the van because she had previously dislocated her left shoulder one month prior to the arrest and was experiencing severe pain as a result of being handcuffed.   The officers refused Melissa's request.

83.     Inside the van, multiple other women repeatedly asked to use the restroom, but no officers came to assist them.

84.     Hours passed with no officer making a single inquiry as to the health, well-being or safety of the women held in police vehicles.

85.     Melissa waited inside the van for two hours before being transported to Las Colinas Detention Center.  While en route to Las Colinas Detention Center, Melissa saw urine on the floor of the van and smelled feces.

86.      After arriving at Las Colinas, Melissa was forced to remain inside the van for over an hour before being processed.

87.     Melissa was released when her mother posted $500 bond at or around 9:30 p.m. on October 28, 2011.

88.     Melissa appeared in court to answer to her criminal charges.  The prosecutor did not file criminal charges against her.

89.     Melissa developed bruises on her lower back after being thrown to the ground and stepped on by arresting officers.

90.     Melissa suffered pain in her left shoulder for several days after her arrest from

1    having her arms zip tied behind her back, which had aggravated her preexisting injury.

2        91.    Melissa never received her cell phone back from law enforcement officials after

3    she was released from Las Colinas.

4        92.    **ANDREA TINAJERO:**  At the time of the incident, Plaintiff Andrea Tinajero

5    was employed at a sandwich shop and plans to attend City College next year.

6        93.    Andrea was sleeping in a tent with approximately eight other people at the Civic

7    Center when San Diego Police Officers and Sheriffs Deputies awakened her at 2 a.m. and

8    ordered her outside.

9        94.    Andrea exited the tent and walked away from the area.  She observed San Diego

10    Police Officers and Sheriffs Deputies in riot gear.

11        95.    Andrea tried to return to the tent to retrieve her bag and shoes, as she was only

12    wearing socks on her feet.

13        96.    As she was attempting to get her shoes, two or three officers tackled Andrea down

14    from behind, forcing her face to the ground and zip tied her hands behind her back.

15        97.    Andrea was not given a meaningful opportunity to comply with any lawful orders.

16        98.    Andrea was not given time and an opportunity to leave the area before getting

17    arrested.

18        99.    Law enforcement officers did not inform Andrea of why she was being arrested

19    when they detained her.

20        100.    Officers took Andrea to a police wagon that was parked inside the Civic Center.

21    Another protester was inside the patty wagon when Andrea arrived.   She was crying and had

22    vomited on herself.

23        101.    After putting Andrea inside, officers opened the patty wagon door once or twice to

24    obtain personal information from the occupants but did not otherwise inquire into their

25    well-being.

26        102.    Andrea and the other protesters were forced to sit in the wagon for over an hour

27    before being transported to a larger van, which was located in a parking lot on the corner of A

28

Street and Second Avenue.

103.    Inside the van, other women repeatedly asked to use the restroom, but no officers came to assist them.

104.    Andrea waited inside the van for two hours before being transported to Las Colinas Detention Center.

105.    Andrea had to urinate but she gave up on making the request after she saw multiple pleas from the other women go unanswered.

106.    Inside the van, Andrea observed urine on the floor of the van and smelled feces.

107.    After arriving at Las Colinas, Andrea was forced to remain inside the van for over an hour before being processed.

108.    Andrea was released when her mother posted $500 bond at or around 9:30 p.m. on October 28, 2011.

109.    Andrea appeared in court to answer to her criminal charges.  The prosecutor did not file criminal charges against her.

110.    Andrea was unable to go to work on October 28, 2011 because of her arrest.

111.    Andrea suffered bruises on her knuckles from being thrown to the ground by law enforcement officials.  She also had cuts on her wrists where the zip ties were placed.

112.    **KENZIE MCDONALD**:  At the time of the incident, Plaintiff Kenzie McDonald was a student at San Diego State University studying sustainability.

113.    At approximately 2 a.m., Kenzie was at the Children's Park on the corner of Island and Front Street exercising her First Amendment rights.

114.    Suddenly, San Diego Police Officers and Sheriffs Deputies swarmed the area, grabbed Kenzie's hair from behind and forcefully threw her to the ground.

115.    One officer choked Kenzie, while another officer tightly secured zip ties around her wrists.

116.    No law enforcement officer asked Kenzie to leave the area prior to her arrest.

117.    Kenzie was not given time and an opportunity to leave the area before getting arrested.

118.    Law enforcement officers did not inform Kenzie of why she was being arrested.

119.    Kenzie was then taken to a larger van located in a parking lot on the corner of A Street and Second Avenue.

120.    Inside the van, other women repeatedly asked to use the restroom, but no officers came to assist them.  Kenzie waited inside the van for several hours before being transported to Las Colinas Detention Center.

121.    Kenzie was released after she posted bond in the afternoon of October 28, 2011.

122.    Kenzie  appeared in court to answer to her criminal charges.  The prosecutor did not file criminal charges against her.

### FIRST CAUSE OF ACTION
### Civil Rights Action (42 U.S.C. § 1983) False Arrest against Does 1-60

123.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

124.    42 U.S.C. § 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress.

125.    Plaintiffs had a firmly established right under the Fourth Amendment to be free from arrest without probable cause.  Defendants arrested Plaintiffs without a warrant  despite the fact that they had committed no crime.

126.    Plaintiffs did not resist the officers; Plaintiffs did not engage in combative behavior with the police; Plaintiffs did not fail to comply with any lawful order; and Plaintiffs did not exhibit any violence or threat of violence.

127.    Plaintiff Nicole Gochmanosky was arrested for while complying with the officers' orders to stay behind the barricade, observing the police raid.

128.    Plaintiff Ashley Wardle was arrested for unlawful assembly when she was not participating in any assembly and she had not been instructed to leave.  Ashley was peacefully

videotaping the activities of law enforcement.

129.    Plaintiffs Melissa Vega and Andrea Tinajero were arrested for illegal lodging while they were attempting to follow orders and leave the Civic Center.  Law Enforcement surround the protesters on all sides, closing in on them, making it difficult and chaotic for the protesters to leave.

130.    Plaintiff Kenzie McDonald was arrested for exercising her First Amendment rights.

131.    Defendants arrested Plaintiffs without probable cause.

132.    Defendants were at this time performing their duties as officers for Defendants, City of San Diego and County of San Diego.

133.    During the relevant period, Defendants were acting under color and pretense of law, to wit: under color of the statutes, ordinances, regulations, customs and usages of the State of California and the City of San Diego.

134.    The Defendants, separately and in concert, engaged in the illegal conduct to the injury of the Plaintiffs, and deprived Plaintiffs of the rights, privileges and immunities secured to them by the Fourth Amendment to the Constitution of the United States and the laws of the United States. Defendants acted with callous disregard for the constitutionally protected rights of Plaintiffs

135.    Plaintiffs were subjected to humiliation, fear, and pain and suffering by the illegal acts of Defendants and suffered injuries as a result of the Defendants' actions.

136.    Plaintiffs are entitled to compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, and all applicable law, and such additional relief as the Court deems just.

### SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. § 1983 RETALIATION against Does 1-60

137.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

138.    Plaintiffs were exercising their First Amendment rights by protesting or

videotaping police activities.

139.   Plaintiffs were arrested and physically punished for exercising those rights.

140.   Plaintiffs Nicole Gochmanosky and Ashley Wardle had a First Amendment right to record the police for engaging in what they perceived to be a violation of the rights of their fellow citizens.

141.   Defendants  did not want citizens recording or making public their unconstitutional acts.

142.   Plaintiffs had a Constitutional right as citizens to petition the government for a redress of grievances.

143.   Defendants used force on Plaintiffs and arrested them as retaliation because they exercised their First Amendment rights.

144.   Defendants used force on the Plaintiffs, arrested them, and denied them their basic human dignity as retaliation and to send a message to the group that they must submit to the authority of law enforcement.

145.   Plaintiffs were subjected to humiliation, fear, and pain and suffering by the illegal acts of Defendants and suffered injuries as a result of the Defendants' actions.

146.   Plaintiffs are entitled to compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, and all applicable law, and such additional relief as the Court deems just.

**THIRD CAUSE OF ACTION**
**Civil Rights Action (42 U.S.C. § 1983) False Imprisonment against Does 1-60**

147.   Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference

148.   Defendants unlawfully detained Plaintiffs for an unreasonable period of time after they knew or should have known that they had committed no crimes.

149.   False imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.

150.   Plaintiffs were imprisoned against their will for hours after being wrongfully

arrested.

151.   Defendants knew or should have known that Plaintiffs had committed no crimes.

152.   Plaintiffs were subjected to humiliation, fear, and pain and suffering by the illegal acts of Defendants and suffered injuries as a result of the Defendants' actions.

153.   Plaintiffs are entitled to compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, and all applicable law, and such additional relief as the Court deems just.

**FOURTH CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1983 DENIAL OF DUE PROCESS against Does 1-60**

154.   Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

155.   Under the Due Process Clause of the United States Constitution, a detainee may not be punished prior to an adjudication of guilt.

156.   The conditions of confinement of Plaintiffs after their arrests amounted to punishment without due process of law.

157.   Plaintiffs were denied the most basic human necessities.  Despite their pleas, they were given no water to drink.  They were not allowed to use the bathroom.  These women were forced to sit in a police vehicle with vomit.  These women were held for so long without access to a bathroom that they were forced to urinate and defecate on themselves while handcuffed. These women were forced to sit for hours inside a police van with urine.  These women were forced to sit inside a van in which someone defecated.

158.   No officer at any time checked on their welfare.

159.   Depriving Plaintiffs of water and access to restrooms was not reasonably related to a legitimate goal.  It was arbitrary and  purposeless and it amounted to punishment that may not constitutionally be inflicted upon pretrial detainees.

160.   Plaintiffs were subjected to humiliation, fear, and pain and suffering by the illegal acts of Defendants and suffered injuries as a result of the Defendants' actions.

161.   Plaintiffs are entitled to compensatory damages, punitive damages, attorney's fees

under 42 U.S.C. § 1988, and all applicable law, and such additional relief as the Court deems just.

## FIFTH CAUSE OF ACTION
### Civil Rights Action (42 U.S.C. § 1983) Malicious Prosecution against Does 1-60

162.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

163.    Defendants intentionally and maliciously instituted a legal action against Plaintiffs without probable cause.

164.    Plaintiffs had broken no laws and there was no probable cause for their arrest or criminal prosecution.

165.    The criminal cases against Plaintiffs were dismissed, resulting in the termination of the charges in their favor.

166.    Defendants acted with reckless disregard of the law and of the legal rights of Plaintiffs in causing a criminal proceeding to begin.

167.    Plaintiffs were subjected to humiliation, fear, and pain and suffering by the illegal acts of Defendants and suffered injuries as a result of the Defendants' actions.

168.    Plaintiffs are entitled to compensatory damages, punitive damages, attorney's fees under 42 U.S.C. § 1988, and all applicable law, and such additional relief as the Court deems just.

## SIXTH CAUSE OF ACTION
### Civil Rights Action (42 U.S.C. § 1983)
### For Failure to Properly Train Against Defendants
### City of San Diego, Lansdowne, Long, County of San Diego, Gore and Does 1-60

169.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

170.    Defendants, as a matter of custom, practice and policy, failed to maintain adequate and proper training as to the constitutional rights of citizens and arrestees; to prevent the consistent and systematic arrests without probable cause, use of excessive force; and to prevent extra judicial punishment by officers.

171.    Defendants failed to provide adequate training to their officers on the requirement that citizens only be arrested based on probable cause.

172.    Defendants failed to provide adequate training to their officers on how to make arrests during a protest.

173.    Defendants failed to provide adequate training to their officers on the rights of pretrial detainees to maintain basic human needs.

174.    Defendants failed to provide adequate training to their officers on the rights of pretrial detainees to conduct welfare checks on all arrestees.

175.    Defendants failed to provide adequate training to their officers on how to effectively control crowds during a raid so as to minimize panic and fear on the part of the citizens, thereby creating chaos.

176.    Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct.

177.    The failure to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the rights of plaintiff and others in his position.

178.    The constitutionally infirm lack of adequate training as to the officers in this case caused plaintiff's damages.

179.    As a result of Defendants' actions, Plaintiffs suffered physical and psychological injuries.

## SEVENTH CAUSE OF ACTION
### Civil Rights Action (42 U.S.C. § 1983) For Failure to
### Supervise and Discipline Against City of San Diego, Lansdowne, Long, County of San Diego, Gore and Does 1-60

180.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

181.    City of San Diego and County of San Diego, as a matter of custom, practice and policy, failed to supervise their officers to prevent, deter and punish the unconstitutional and

excessive use of force.

182. No supervising officer from the Police Department or the Sheriff's took appropriate steps to supervise the individual officers who were making arrests without probable cause and using unnecessary and excessive force during the arrests.

183. Upon information and belief, the defendants knew or should have known of the Constitutional violations committed by their officers but failed to correct their abuse of authority, or discourage their unlawful use of authority.

184. Upon information and belief, the supervising officers from both Departments witnessed the Constitutional violations but failed to supervise or discipline the offending officers.

185. To the contrary, defendants condoned and acquiesced in the abusive behavior of their officers by refusing to retrain them, discipline them, or correct their abusive behavior.

186. Doe Defendants were not disciplined for their unconstitutional treatment of Plaintiffs and other protesters.

187. Defendants were aware that their officers arrested hundreds of citizens without probable cause and that the prosecuting attorney refused to file criminal charges.

188. Defendants were, or should have been, aware that the policy regarding supervision and discipline of officers who violated the civil rights of the citizens and commit assault and battery was so inadequate that it was obvious that a failure to correct it would result in further incidents of dangerous and lawless conduct perpetrated by their officers.

189. The constitutionally deficient investigation and lack of discipline was done with deliberate indifference to the rights of plaintiffs and others in their position.

190. The lack of adequate supervision and discipline  caused plaintiffs' damages.

191. As a result of Defendants' actions, Plaintiffs suffered physical and psychological

injuries.

## EIGHTH CAUSE OF ACTION
**Monell Municipal Liability Civil Rights Action (42 U.S.C. § 1983)**
**Against Defendant CITY OF SAN DIEGO and COUNTY OF SAN DIEGO**
**Policy of Use of False Arrest and Excessive Force and Denial of Basic Human Dignity**

192.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

193.    Defendants City and County promulgated and maintained an unconstitutional policy, ordinance or regulation which allowed their officers to use the force in violation of the rights of citizens.

194.    Defendants maintained an unconstitutional policy, ordinance or regulation which allowed their police officers to make arrests without probable cause.

195.    Defendants maintained an unconstitutional policy, ordinance or regulation which allowed their police officers to deny basic human need to pretrial detainees.

196.    Defendants were deliberately indifferent to the widespread unconstitutional acts by their officers and failed to set forth appropriate policies regarding the treatment of peaceful protesters.

197.    During the relevant period, defendant police officers, Does 1 through 30, were acting pursuant the  policy of defendant City of San Diego.

198.    During the relevant period, defendant sheriff deputies, Does 31 through 60, were acting pursuant the  policy of defendant County of San Diego.

199.    Defendants knew or should have known of the risks posed by the Departments' policies regarding the treatment of arrestees.

200.    Defendants were deliberately indifferent to the right of the plaintiffs to be free from, and protected from, harm by the brutality of police officers and to be secure in their bodily

integrity.

201.    As a direct result, Plaintiffs were wrongfully arrested, battered, intentionally and negligently inflicted with emotional distress and their Constitutional rights were violated.

202.    The unlawful and illegal conduct of the defendants deprived Plaintiffs of the rights, privileges and immunities secured to them by the Constitutions of the United States and of the State of California.

203.     As a direct, proximate and foreseeable result, Plaintiffs have suffered damages in an amount according to proof at the time of trial.

### NINTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress against Does 1-60

204.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

205.     By engaging in the acts alleged herein, Defendants engaged in outrageous conduct with an intent to or a reckless disregard of the probability of causing Plaintiffs to suffer emotional distress.

206.    As a direct, proximate and foreseeable result, Plaintiffs suffered severe emotional distress and the outrageous conduct was the cause of the emotional distress suffered by Plaintiffs.

207.     The conduct of Doe Defendants also amounts to oppression, fraud or malice and punitive damages should be assessed against Defendants for the purpose of punishment and for the sake of example.

### TENTH CAUSE OF ACTION
### False Arrest  Against Does 1-60 (State Action)

208.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

209.    Defendants arrested Plaintiffs without a warrant, despite the fact that Plaintiffs committed no crimes.

210.    Defendants arrested Plaintiffs without probable cause, subjecting them to an unlawful seizure of their person.

211.    The Defendants, separately and in concert, engaged in the illegal conduct to the injury of the Plaintiffs, and deprived Plaintiffs of the rights, privileges and immunities secured to Plaintiffs by the Fourth Amendment to the Constitution of the United States and the laws of the United States.  Defendants acted with callous disregard for the constitutionally protected rights of Plaintiffs.

212.    Plaintiffs were subjected to humiliation, fear, and pain and suffering by the illegal acts of Defendants and suffered injuries as a result of the Defendants' actions

## ELEVENTH CAUSE OF ACTION
### Battery against Does 1-60

213.    Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

214.     Defendants acted with an intent to cause harmful or offensive contact with the Plaintiffs and the intended harmful or offensive contact did in fact occur.

215.    The harmful or offensive contact was not privileged nor consented to.

216.    As a result of the Defendants' intent to cause harmful or offensive contact with Plaintiffs and the fact that the intended harmful or offensive contact did in fact occur, Plaintiffs have suffered damages according to proof at the time of trial.

217.    Defendants' conduct also amounts to oppression, fraud or malice and punitive damages should be assessed against them for the purpose of punishment and for the sake of example.

**TWELVTH CAUSE OF ACTION**
**Negligence against All Defendants**

218.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

219.    Defendants had a duty to Plaintiffs to act with ordinary care and prudence so as not to cause harm or injury to another.

220.    By engaging in the acts alleged herein, the Defendants  failed to act with ordinary care and breached their duty of care owed to Plaintiff.

221.    Defendants City of San Diego and County of San Diego failed to act with ordinary care in failing to properly train and supervise their officers with respect to arrests and detention of protestors.

222.    As a direct, proximate and foreseeable result of defendants' breach of their duty of care, Plaintiffs suffered damages in an amount according to proof at the time of trial.

**THIRTEENTH CAUSE OF ACTION**
**California Civil Rights Violation (Section 52.1) against all defendants**

223.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

224.    Plaintiff had a firmly established right to be free from excessive force under the Fourth Amendment through the Fourteenth Amendment to the United States Constitution and the equivalent provisions of the California Constitution.

225.    The California Legislature has declared that it violates our state civil rights act for any person to interfere with the exercise or enjoyment by any individual of his rights secured by the United States Constitution or state or federal law.  This includes any interference of these rights by threats, intimidation, coercion or attempted threats, intimidation or coercion.

226.    The Defendants interfered with Plaintiff's rights under the Fourth Amendment of the United States Constitution and the equivalent provisions of the state Constitution by the use of force alleged above.

227.    This interference with Plaintiff's rights was perpetrated by the Defendants in violation of Section 52.1 and their right under the Fourth and Fourteenth Amendments to be free from excessive force under the Fourth Amendment and the Fourteenth Amendment to the United States Constitution and the California Constitution.

228.    Due to the violation of Plaintiff's rights by all Defendants, Plaintiffs suffered economic damages and non-economic damages, including, but not limited to, emotional distress, pain and suffering, medical expenses and fear caused by the acts complained of herein according to proof at the time of trial.

229.    Plaintiffs are also entitled to the statutory civil penalties set forth in Civil Code Section 52, attorneys' fees and costs of suit incurred herein.

230.    The conduct of Defendants also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294 et seq. and punitive damages should be assessed against each non-municipal defendant for the purpose of punishment and for the sake of example. Defendants CITY OF SAN DIEGO AND COUNTY OF SAN DIEGO are liable for the acts of their officers as they have agreed with and or ratified the acts.

**FOURTEENTH CAUSE OF ACTION**
**[INJUNCTIVE RELIEF]**

231.    Plaintiffs reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

232.    Plaintiffs are informed and believe and thereon allege that, unless enjoined,

defendants will continue to engage in the unlawful acts and in the policies and practices described above, in violation of the legal and constitutional rights of the plaintiffs and others who are similarly situated.

233.    Plaintiffs face the real and immediate threat of repeated and irreparable injury and continuing, present adverse effects as a result of the unlawful misconduct, policies and practices of the defendants. Plaintiffs have no adequate and complete remedy at law.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs pray for a judgment as follows:

1.    Directing Defendants to set forth policies and procedures as may be necessary and proper with respect to arrest and detention of peaceful protestors;

2.    Entering judgment for compensatory, general, and special damages in an amount in accordance with proof;

3.    Entering judgment for exemplary damages against each of the individual defendants in an amount sufficient to punish and to make an example of said defendants, and to deter said defendants and others from engaging in similar conduct.;

4.    Awarding reasonable attorney's fees, expenses, and costs of suit; and

5.    Granting such other and further relief as the Court deems proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a jury trial.

Dated:    December 10, 2011                     Respectfully submitted,

                                                /s/    *Julia Yoo*
                                                JULIA YOO
                                                EUGENE G. IREDALE
                                                Attorneys for Plaintiffs